IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BONESTROO, ROSENE, ANDERLIK & )
ASSOCIATES, INC., )
)
Plaintiff, )
)
v. )    No.   05 C 2184
)
ROBERT J. DEVERY, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Bonestroo, Rosene, Anderlik & Associates, Inc. ("Bonestroo")
has sued Robert Devery ("Devery") in its four count First Amended
Complaint ("FAC"), comprising three charges of breach of contract
and one charge of breach of fiduciary duty.  After discovery,
Devery has now responded with a Fed. R. Civ. P. ("Rule") 56
motion for summary judgment.  For the reasons set out in this
memorandum opinion and order, Devery's motion is denied in part
and granted in part.

## Summary Judgment Standard

Familiar Fed. R. Civ. P. ("Rule") 56 principles impose
on movant Devery the burden of establishing the lack of a genuine
issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986)).[1]  For that purpose this Court must "consider the

---

[1]  To that end this District Court's LR 56.1 calls for
evidentiary statements by the movant and itemized responses to
such statements by the nonmovant (in each instance with record
citations), thus highlighting the existence or nonexistence of
factual disputes.  This opinion cites to Devery's LR 56.1(a)(3)
statement of material facts as "D. St. ¶--," to Bonestroo's LR

evidentiary record in the light most favorable to the nonmoving party...and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). That said, to avoid summary judgment a nonmovant still "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)). In the end, however, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the facts viewed in the light most favorable to Bonestroo, but only so long as those facts are supported by record evidence.[2]

## Background

On March 22, 2001 Bonestroo purchased all the stock of Devery Engineering, Inc. ("Devery Corp."), a corporation providing "engineering and other related services" (D. St. ¶5, B.

---

56.1(b)(3)(A) response as "B. St. ¶--" and to Bonestroo's LR 56.1(b)(3)(B) statement of additional facts as "B. Add. St. ¶--" (to which Devery filed no response). "D." and "B." will also be used to identify the litigants' legal memoranda ("Mem.") and supplemental memoranda ("Supp. Mem."), Bonestroo's second supplemental memorandum of law ("2d Supp. Mem.") and Devery's exhibits ("Ex.").

[2] Some of Bonestroo's LR 56.1 submissions overstate the evidence to which they cite (see, e.g., B. Add. St. ¶¶18-19). Although strict compliance with LR 56.1 is the norm (see, e.g., Ammons v. Aramark Unif. Servs., Inc., 368 F.3d 809, 817 (7th Cir. 2004)), this opinion has not stricken those submissions altogether, instead crediting them only to the degree justified by the evidentiary record.

Add. St. ¶1). In connection with that acquisition, Devery Corp. shareholder Devery entered into two agreements with Bonestroo: an Agreement and Plan of Merger ("Merger Agreement") and a Second Amendment to Stock Purchase and Redemption Agreement ("Shareholder Amendment")(D. St. ¶¶5-6). Devery also signed an Employment Agreement under which he agreed to serve as a Branch Manager for Bonestroo's Grayslake, Illinois office (id. ¶6; D. Ex. 11 §1.1). All three agreements (collectively "Acquisition Agreements") included noncompete covenants precluding Devery, among other things, from soliciting, transacting or accepting any business from Bonestroo clients or customers, either on his own behalf or on behalf of another person or corporation (D. St. ¶¶18-20).

As B. Mem. 3 explains from Bonestroo's perspective:

> Sometime in late 2003, Devery advised senior management at Bonestroo that he wanted to begin transitioning out of Bonestroo. Bonestroo, of course, needed time to find a replacement and transition Devery's clients to that replacement.

That led to a major recasting of the parties' relationship. By their entry into two related contracts--a Separation Agreement and General Release ("Separation Agreement") and an Independent Contractor Agreement ("Contractor Agreement)--they agreed to terminate Devery's employment effective January 8, 2004, after which he would provide services to Bonestroo as an independent contractor until December 31, 2004 "or such other date as

3

acceptable to the parties by mutual agreement" (D. St. ¶¶9, 38, 39; D. Exs. 12, 13).

In part the new agreements (1) specified 17 services Devery was obligated to render (D. Ex. 13 Sch. A), (2) required Bonestroo to pay Devery both a weekly payment for the duration of the Contractor Agreement and a severance payment once it was terminated (other than by Bonestroo for cause)(D. St. ¶¶15, 40; D. Ex. 12 §2), (3) required the parties to "cooperate in drafting public communications regarding Devery's transition and departure" (D. Ex. 12 §5) and (4) provided that Devery could not be terminated without notice and an opportunity to cure (D. Ex. 13 §6). As for the preexisting "non-competition, non-solicitation and confidential information" provisions that had been set out in the Acquisition Agreements, Separation Agreement §9 confirmed that those were still viable (each had a defined duration that was not altered), but the same section carved out a general exception to the Acquisition Agreements' non-compete provisions under which Devery could "become a full-time employee of a client of [Bonestroo] provided that in Devery's capacity with the client, Devery shall fairly consider the Bonestroo firm for opportunities to provide services to the client."

In January 2004, soon after those agreements were made and the Contractor Agreement had come into effect, Devery informed the Village of Round Lake Beach ("Round Lake Beach"), a Bonestroo

4

client, that there was "an opportunity for [Devery] to work for them" and asked if they would be interested in hiring him (Devery Dep. 6; B. Add. St. ¶16). Discussions between Devery and Round Lake Beach continued "throughout the year," culminating with the November 8, 2004 signing of an Independent Contractor/Official Contract For Services ("Round Lake Beach Contract") to take effect January 1, 2005 (Devery Dep. 10; D. Ex. 15).

In the meantime, beginning in the summer of 2004 Bonestroo Branch Manager Thomas Palansky ("Palansky") began to meet with Devery to discuss his plans as to the potential December 31, 2004 expiration of his Contractor Agreement (B. Add. St. ¶¶6-7). Devery, who had not informed Palansky or Bonestroo of his negotiations with Round Lake Beach (id. ¶22), "appeared interested in continuing his relationship with Bonestroo, and promised to let [Palansky] know as soon as he made a decision" (Palansky Aff. ¶3).

Palansky and Devery then had three lunch meetings between September and November 2004, during each of which Devery told Palansky that he was possibly interested in staying with Bonestroo beyond the contract's expiration (id. ¶4). In the last two meetings they went so far as to sketch out organizational charts to figure out where Devery might fit best (B. Add. St. ¶11). Meanwhile, during the same time period--the summer and fall of 2004--Devery repeatedly declined Palansky's requests that

he accompany Devery to client meetings, stating that the timing was not good (id. ¶9).

Just one day after the last of their meetings, Devery told Palansky that he would not be staying on with Bonestroo past the December 31, 2004 expiration date (id. ¶12). But Palansky was then still unaware of Devery's agreement with Round Lake Beach (or of the negotiations leading up to it), until a Bonestroo employee passed on a rumor that Devery had accepted a position there (B. Add. St. ¶¶13, 22, 23). When Palansky then confronted him, Devery said that he had accepted full-time employment with Round Lake Beach--he did not refer to his contractual status there designating him as an independent contractor (id. ¶24). Based on their conversation, Devery and Bonestroo agreed to carve out a specific exception to Devery's noncompete covenants, modeled on the general exception included in the Separation Agreement, allowing Devery to "work full-time" for Round Lake Beach as long as he "fairly considered" Bonestroo for opportunities to provide services to Round Lake Beach (id. ¶24).

During the fall of 2004 Devery also spoke with Dan Quick ("Quick"), Administrator of another Bonestroo client, the Village of Wauconda ("Wauconda"), telling him that he would be leaving Bonestroo and that Bonestroo had allowed him to accept a full-time position with Round Lake Beach despite his noncompete agreements (B. Add. St. ¶¶25-27). When Quick asked Devery (on a

6

couple of occasions) about Bonestroo's plans for dealing with his
departure and related "transition" issues, Devery told him he
"didn't have any answer for him" (Devery Dep. 20). Nor did
Devery tell Bonestroo about Quick's transition questions (B. Add.
St. ¶30).

Palansky also remained unaware of the conversations between
Devery and Quick until the latter asked to meet with him just a
few days after Palansky had learned Devery was leaving (B. Add.
St. ¶¶33, 34). At that meeting Quick told Palansky that he knew
of Devery's impending departure, that Wauconda wanted Bonestroo
to allow Devery to continue to serve as its Village Engineer once
he left Bonestroo's employment (D. St. ¶34(viii)) and that
Wauconda would fire Bonestroo if Bonestroo did not allow such
continuation (id. ¶34(ix)), but that if Devery were permitted to
stay on he would have the authority to select outside engineering
firms when additional assistance was needed (Quick Aff. ¶10).

In the face of that message and believing that there could
be significant overflow work that Devery could steer its way,
Bonestroo agreed to Quick's request (B. Add. St. ¶¶35-39).
Accordingly Bonestroo created a specific exception to Devery's
noncompete covenants under which Devery could "work as a
Consultant for Wauconda as Village Engineer," again as long as he
fairly considered Bonestroo for opportunities to provide services
to Wauconda (id. ¶39). Both that carve-out and the understanding

7

as to Round Lake Beach were incorporated into the parties'
Amendment to Independent Contractor Agreement ("Contractor
Amendment"), to take effect December 31, 2004 (D. Ex. 14).

Still another Bonestroo client, the Village of Round Lake
Park ("Round Lake Park"), had become involved in the events that
fall, once more without Palansky's knowledge. It had also heard
about Devery's impending departure from Devery among others, and
it too wanted him to stay on after the Contractor Agreement
expired (B. Add. St. ¶¶41-42; Palansky Aff. ¶14). Although the
chronology is not clear, Round Lake Park Mayor Ila Bauer
("Bauer") made two different attempts to secure Devery's
continued employment. First, at some point Bauer simply asked
Devery directly to continue working for Round Lake Park after he
left Bonestroo (D. St. ¶35(ii)), but Devery cited his noncompete
covenants and declined (id. ¶35(iii)). Later, when Palansky
arrived to break the news (or so he thought) to Bauer about
Devery's departure, Bauer asked Palansky to extend Devery yet
another dispensation from his noncompete covenants (Palansky Aff.
¶13). This time Palansky refused (B. Add. St. ¶43), and Devery
has not performed any engineering services for Round Lake Park
since his relationship with Bonestroo ended (D. St. ¶35(iv)).

On December 31, 2004 the Contractor Agreement expired by its
terms (D. St. ¶24). At no point during the contractual term had
Devery been given written notice that he was assertedly failing

8

to perform the duties that the agreement assigned to him, nor had the agreement been terminated for cause (id. ¶¶42-43). Hence Bonestroo dutifully made both the weekly payments and the post-termination severance payments required under the Separation Agreement (id. ¶¶15, 44-45).

On January 1, 2005 the Round Lake Beach Contract came into effect (id. ¶26), and four days later Devery formed the second incarnation of Devery Engineering Incorporated ("Devery Engineering"), which firm Wauconda hired to provide consulting services as its Village engineer (id. ¶¶24, 34 (xiii)). Just over a week later Wauconda fired Bonestroo from a wastewater project on which it had been working, and at some point (the record again leaves the timing unclear) Bauer fired Bonestroo from at least some aspect of Round Lake Park's work because of Bonestroo's failure to inform her of Devery's departure in a timely manner (B. Add.St. ¶¶44-45). On April 13, 2005 Bonestroo filed this action.

## Choice of Law

In a diversity case such as this, a district court must follow the choice of law rules of the forum to determine the applicable substantive law (Thomas v Guardsmark, Inc., 381 F.3d 701, 704-05 (7th Cir. 2004)) -- and with limited exceptions, not applicable here, Illinois caselaw honors a contract's choice of law provision (id. at 705). In this instance the Merger

9

Agreement, Employment Agreement and Contractor Agreement all call for the application of Minnesota law (D. Ex. 9 §13.2; D. Ex. 11 §5.1; D. Ex. 13 §11(c)). And because the Contractor Amendment is a "modif[ication] and amend[ment]" of the Contractor Agreement and specifies that all other provisions of the Contractor Agreement are to remain in force (D. Ex. 14 Recitals), that too will follow the same route. Similarly, the Shareholder Amendment is also controlled by the choice of law provisions of the agreements that it modifies and amends--the Stock Purchase and Redemption Agreement and its 1st Amendment--and once again they look to Minnesota law (D. Ex. 10 Recitals; Stock Purchase and Redemption Agreement §11.5; 1st Amendment to Stock Purchase and Redemption Agreement Recitals).

When on the other hand a contract does not include a choice of law provision, as is the case with the Separation Agreement, Illinois courts utilize the "most significant contacts" test (Hinc v. Lime-O-Sol Co., 382 F.3d 716, 719 (7th Cir. 2004)), which this Court has often characterized as a "center of gravity" approach. Although most of the factors relevant to such an analysis are a wash (for example, the parties offer no information about the place of contracting or negotiation, and while Bonestroo is a Minnesota corporation with its principal place of business in that state, Devery is an Illinois citizen (id.; D. St. §§1-2)), the subject matter of the agreement--

10

looking to the windup of Devery's then-new independent contractor status--was Illinois based.

That focus would appear to suggest the application of Illinois substantive law. On the other hand, the Separation Agreement's preservation of various of the covenants in the prior agreements, all of which contained Minnesota choice of law provisions, would seem to look to that state's substantive law. Fortunately, both states' operative rules of law in this area are the same, so that the section of this opinion dealing with the Separation Agreement will draw on both sources in reaching the same destination.

## Count I: Breach of the Contractor Agreement

Bonestroo's Count I alleges that Devery breached the Contractor Agreement by failing to perform these services it required of him (D. Ex. 13 Sch. A):

> 5. Actively work to develop a relationship between Bonestroo staff and existing clients in order to transfer client management tasks to the Libertyville Branch Office Manager and other Bonestroo staff...
>
> 6. Make appropriate efforts and strategize with the Office Manager all efforts needed to retain existing clients.
>
>         \*   \*   \*
>
> 14. Cooperate in the transition of clients, personnel, and business in a positive professional manner.

Although Bonestroo never specifies just which of Devery's alleged actions (or non-actions) it feels violated those provisions, its

filings suggest that such delinquencies would at least encompass (1) Devery's failures to bring Palansky with him to client meetings, (2) his multiple assurances that he was "interested" in renewing the Contractor Agreement, despite his having told clients that he would not be returning to Bonestroo and his having been in negotiations with Round Lake Beach for a post-Contractor Agreement position shortly after the Contractor Agreement took effect, (3) his agreement with Round Lake Beach to an employment relationship beyond that allowed by the Separation Agreement, (4) his giving Wauconda information that allowed it to pressure Bonestroo into allowing Devery to work for Wauconda independently and (5) his failure to tell Bonestroo that Quick (who was aware Devery was leaving) had inquired about how Bonestroo planned to deal with the transition.

In response Devery makes two arguments as to why Count I should be dismissed on summary judgment. First Devery quibbles about the precise duties created by the Contractor Agreement, arguing for example that the above-quoted Sch. A ¶5 does not require him to "retain clients" (D. Mem. 2-3). But while that paragraph does not expressly speak of client retention, the next paragraph certainly does, and in any case the actions (or failures to act) with which Devery is charged might perhaps be found to have violated his obligations--including his helping to develop "relationship[s]" between Bonestroo and existing clients

12

and his assistance in retaining clients for Bonestroo.

Alternatively Devery argues that because Bonestroo "lulled" him into thinking that he was performing his duties under the Contractor Agreement adequately, it is equitably estopped from now suing for failure to perform (D. Mem. 4-7). Even though it will become evident that "estoppel" is an inapt label for Devery's Count I defense, this opinion will initially take him at his word in that respect, but will then pose a more appropriate alternative analysis.

To establish an equitable estoppel defense under Minnesota law, a defendant must show that plaintiff (1) misrepresented material facts, (2) knew its representations were untrue and (3) intended that the representations be acted upon, while defendant (4) did not have knowledge of the true facts and (5) relied upon the misrepresentations to his detriment (Transam. Ins. Group v. Paul, 267 N.W.2d 180, 183 (Minn. 1978)). As those elements suggest, an estoppel claim tends to be highly fact-specific and is therefore generally incapable of being resolved on summary judgment (Brenner v. Nordby, 306 N.W.2d 126, 127 (Minn. 1981)).

Here Devery has failed to show the required absence of a genuine question of material fact as to more than one of those elements. First, even if Bonestroo's silence and its continued payment of Devery's weekly salary could some how be labeled as a "misrepresentation" of a material fact (D. Mem. 4-6)--the alleged

13

inadequacy of Devery's performance--Devery has pointed to no evidence in support of the second required element that Bonestroo _intended_ to mislead him. Indeed, despite Devery's argument to the contrary (D. Mem. 7), there is a dispute as to the degree (or even the existence) of Bonestroo's awareness of many of Devery's activities at the time of such purported "misrepresentations." For example, Bonestroo says it was never informed of some of the complained-of conduct, such as Devery's failure to pass along Quick's inquiries about Bonestroo's transition plans or his signing of an agreement (the Round Lake Beach Contract) that allegedly went beyond the personal employment services allowed by his agreements with Bonestroo (B. Add.St. §§24, 30, 32).

Furthermore, when looked at as a whole, Bonestroo's evidence might arguably support a finding that, despite Bonestroo's silence, not only was Devery well aware of "the true facts"--that he had failed to help develop Bonestroo-client relationships and had not made "appropriate efforts" in retaining clients--but that his actions were part of an intentional attempt to undermine those relationships and lay the groundwork for his own acquisition of those clients.[3] With that pro-Bonestroo scenario

---

[3]Bonestroo has adduced evidence that Devery engaged in lengthy (and undisclosed) negotiations with Round Lake Beach, that those negotiations resulted in a contract with Round Lake Beach that Bonestroo contends went beyond limits allowed by his Bonestroo agreements, that Devery repeatedly indicated that he was interested in staying on with Bonestroo while simultaneously engaging in undisclosed activity that indicated otherwise, that

14

buttressed by reasonable pro-Bonestroo inferences, Devery could not claim that he had innocently and unknowingly relied on Bonestroo's alleged misrepresentations to his detriment. While this Court of course makes no findings as to the parties' actual knowledge or intent at this stage, Bonestroo has at least raised sufficient questions as to those issues to preclude judgment as a matter of law on equitable estoppel grounds.

Devery's equitable estoppel argument also points to the Contractor Agreement's notice and cure provision and the fact that no notice or opportunity to cure was provided to him (D. Me. 4-7). Although such lack of notice might ultimately defeat Bonestroo's claim of contractual breach for reasons explained hereafter, it does not do the job at this stage on estoppel grounds.

First, even on the premise that such notice and opportunity were required in these circumstances, the failure to provide it hardly establishes equitable estoppel as a matter of law, given the already-identified questions of fact. Moreover, the Contractor Agreement frames the notice and cure clause as a prerequisite to termination of that agreement (D. Ex. 13 §6), not

Devery told clients of his departure plans before informing Bonestroo, that he failed to inform Bonestroo that one client posed questions about how Bonestroo would deal with Devery's departure, that Devery formed Devery Engineering immediately after the Contractor Agreement expired and that either Devery, Devery Engineering or both have since begun working for two significant Bonestroo clients, Wauconda and Round Lake Beach.

15

as a prerequisite to bringing suit for breach of contract. If the latter were the case, a party injured by a contractual breach would have no remedy in damages, being forced instead to let the violator go scot free without paying for the harm he had caused.

Devery's supplemental memorandum[4] found no Minnesota caselaw supporting such an expansion of the contract's plain language,[5] and the cases that he cites from other jurisdictions are readily distinguishable (B. 2d Supp. Mem. 2; D. Supp. Mem. 5).[6] As Devery himself points out (albeit in a different context), it is ordinarily "not for [the] court to create or add exceptions to the contract or to remake it in behalf of either of the

---

[4] At this Court's invitation the parties submitted supplemental memoranda that examined both the notice and cure issues raised here and the extent, if any, to which Devery's disclosure of his post-Contractor Agreement plans to clients before telling Bonestroo violated his contractual obligations.

[5] While <u>Nadeau v. County of Ramsey</u>, 245 N.W. 2d 254, 256 (Minn. 1976) (per curiam) found a lawsuit to be barred for lack of notice, that bar was provided by statute.

[6] For example, while <u>Colony Square Co. v. Prudential Ins. Co. of Am.</u>, 843 F.2d 475 (11th Cir. 1988) did hold suit precluded due to plaintiff's failure to follow a notice and cure procedure, that was because "the context of the entire contract" required notice and an opportunity to cure "as conditions precedent to an action for damages" (<u>id</u>. at 481). By contrast, here the inclusion of such a requirement as a precondition to termination, coupled with silence on the subject as to contractual breaches, creates a negative inference under ordinary principles of contract interpretation. More on point is <u>Ameritech Info. Sys. v. Bar Code Res.</u>, 331 F.3d 571 (7th 2003), where our Court of Appeals found that a notice and cure provision similar to that at issue here applied only to termination of the contract and did not "set out conditions precedent to fifing a suit for breach of contract" (<u>id</u>. at 574).

16

contracting parties" (D. Mem. 3, quoting <u>Telex Corp. v. Data</u>
<u>Prods. Corp.</u>, 135 N.W.2d 681, 687 (Minn. 1965)), and he has
presented no reason to depart from that well-established rule in
this case.

As said earlier, however, the just-completed analysis really
reflects Devery's counsel's having fallen victim to the tyranny
of labels by inappropriately invoking the estoppel doctrine.
This Court would be remiss if it failed to identify a more
plausible relevance of the notice-and-opportunity-to-cure
provision.

It will be recalled that the provision was part of the
restructuring of the parties' relationship that committed Devery
only until the end of 2004. Unsurprisingly, then, all of the
earlier-quoted contractual provisions (Contractor Agreement §§5,
6 and 14) called for cooperative transition efforts involving
both Devery and Bonestroo's people--not just those by Devery.
Just as importantly, it would be only reasonable--and very much
in Bonestroo's self-interest--for those joint efforts to have
begun early on, not well into 2004. And that in turn strongly
suggests the reasonableness of Devery's contention that if
Bonestroo had viewed him at any point as not performing as he had
promised, it would then have served him with the contractual
notice (carrying with it the concomitant opportunity to cure).

From that perspective, the absence of notice on Bonestroo's

17

part implies the absence of a breach on Devery's part. But the parties have not provided the kind of input that would allow a disposition of that claim at this stage. All that Bonestroo has adduced is Devery's putting off of Palansky's requests to meet jointly with clients, and even those requests have not been time-identified, nor have the bona fides of Devery's stated reasons been confirmed or negated. In sum, the approach suggested here, although certainly a better fit than Devery's estoppel theory, does not alter the current denial of summary judgment

Although what has gone before has dispatched Devery's motion without any need to rely on Bonestroo's challenge to his having negotiated with clients without informing Bonestroo, something should be added as to the invalidity of that criticism--or at least the bulk of it. After all, the very nature of the restructuring of the parties' relationship--the shift from an employment relationship to that of independent contractor, with no commitment beyond the end of 2004--entitled Devery to make whatever plans he wanted to make for the post-2004 period without any obligation to inform Bonestroo, either in advance or afterwards.

That would not of course excuse any such activity that actually violated Devery's contractual non-solicitation or noncompete covenants, but those things are independent of Bonestroo's unwarranted pejorative criticism of Devery's

negotiation of any other post-2004 contacts as such. It should be added as well that neither the parties nor this Court have or has evaluated the propriety of Devery's assertedly stringing Bonestroo along, in response to Bonestroo's questions, as to whether he had reached a decision about extending the independent contractor arrangement beyond 2004.

## Count II: Breach of Noncompete Provisions

Bonestroo also charges that Devery breached his noncompete covenants by impermissibly soliciting and accepting business from Bonestroo clients, either as an individual or through his newly formed Devery Engineering corporation (FAC §47).[7] As the ensuing discussion reflects, those charges get mixed reviews.

As for the solicitation charge, Bonestroo has limited that aspect of its claim to Devery's interaction with two specific clients, Wauconda and Round Lake Park (D. St. §33). On that score Devery's motion is partially successful and partially not.

In Wauconda's case Devery supports his bid for summary judgment by pointing to Village Administrator Quick's statement (echoed by Devery's own affidavit) that "at no time did Robert Devery solicit the Village of Wauconda for employment" (D. Mem. 9; Quick Dep. §15; D. Aff. ¶26). But Bonestroo counters by

---

[7]Bonestroo originally alleged two additional ways in which Devery breached those provisions--by forming a competing company that provides the same services in the same geographic area and by soliciting Bonestroo employees (FAC §47)--but those claims have since been abandoned (B. R.St. §§25, 32; B. Mem. 12 n. 3).

19

contending that the content of Devery's interactions with Quick is nevertheless sufficient to raise a genuine question as to whether he engaged in prohibited "direct[ ] or indirect[ ]" solicitation of Wauconda (D. Ex. 9 §11.12).

Solicitation requires more than simply notifying a client of one's impending departure--there must also be "some element of attempted persuasion" (Benfield v. Moline, No. 04-3513, 2006 WL 452903, at *6 (D.Minn. Feb. 22)). That element of persuasion need not be overt or explicit, but can be satisfied by an "implication" that a client should "switch their business to his new enterprise" (Bellboy Seafood Corp. v. Nathanson, 410 N.W.2d 349, 353 (Minn. Ct. App. 1987)). Deciding whether such an implication is in fact sufficient to constitute solicitation is "a matter of nuance and inference which [is] for the jury to determine" (id.).

Here Devery told Quick not only that he was leaving Bonestroo but also that Bonestroo had already allowed him to accept work from another client (Round Lake Beach). When Quick then asked Devery more than once what Bonestroo was planning to do about transition when Devery left, Devery simply told Quick he "didn't have any answer" (and he made no later effort to provide one). On the present record those responses might be perceived as an attempt to suggest to Quick that Bonestroo was unprepared

20

to address Wauconda's needs upon Devery's departure.[8] Again such a perception could allow a jury to find that Devery had implicitly attempted to persuade Quick to "switch his business"-- a possibility sufficient to ward off summary judgment on that facet of Bonestroo's solicitation claim.

On the other hand, no such potential exists as to Devery's claimed "solicitation" of Round Lake Park. This time Bonestroo has offered no evidence or even argument suggesting that Devery did solicit Round Lake Park. Where as here a summary judgment movant has met its initial burden of production, the nonmovant may not simply rest on its pleadings -- it must provide "more than a mere scintilla of evidence" in its favor (CAE, Inc. v. Clean Air Eng'q, Inc. 267 F.3d 660, 667 (7th Cir. 2001)). In this instance there is not even a scintilla, so that Devery is granted summary judgment on that portion of Bonestroo's solicitation claim.

In addition to solicitation, Bonestroo also charges Devery with improperly accepting work from Wauconda and Round Lake Beach. In that regard Devery contends that the work that he and Devery Engineering have done is within the exceptions to his noncompete limitations carved out by the Contractor Amendment (D.

---

[8]As indicated earlier, the record presented to this Court on the current motion does not answer such questions as whether Devery's responses were truthful or whether, if so, that was the result of Bonestroo's or his own deficiency in their efforts at transition earlier in the independent contractor period.

Mem. 9-11). To be sure, those exceptions allow Devery to work for Wauconda and Round Lake Beach in some capacity, but they also require him to "fairly consider [Bonestroo] for opportunities to provide services" to the two Villages (D. Ex. 14, §§4-5). Here the evidence tendered on the current motion (while perhaps not as inculpatory as Bonestroo would have it) suggests the opposite: that as to at least some opportunities Devery has affirmatively not considered Bonestroo, either fairly or otherwise (D. Aff. 62-63). Under these circumstances there is at least a genuine question of fact as to whether Devery's actions qualified under those noncompete exceptions, so that his motion for summary judgment on the issue must be and is denied.[9]

### Count III: Breach of the Separation Agreement

Bonestroo's FAC Count III alleges breach of the Separation Agreement. Here are the substantive allegations in that respect

---

[9]Bonestroo's Mem. 12-13 also argues that the terms of those noncompete exceptions allowed Devery to accept work from clients only in his individual capacity, not through his corporation. Although Bonestroo disclaims the notion that simply setting up the corporation was itself a breach, it articulates no basis (and cites no authority) for the proposition that the corporation cannot be a contracting party. In that regard it will be recalled that Bonestroo acceded to an amended noncompete provision that permitted both full-time work for Round Lake Beach and consultation for Wauconda, arrangements that had to put Bonestroo on notice that Devery could not reasonably be expected to be rendering all of the required personal services by himself. But that issue need not be resolved at this time, for the question whether Bonestroo was "fairly considered" for the opportunities to provide services precludes summary judgment in any event.

(Count III ¶¶52 and 53):

> 52. Devery's Separation Agreement and General Release required Devery to comply with the terms of his Independent Contractor Agreement, and with the non-compete and non-solicitation provisions of his Employment Agreement, the Plan of Merger, and the Shareholder Agreement.
>
> 53. By his breaches of those agreements, as described above, Devery breached his Separation Agreement and General Release. Accordingly, Devery was not entitled to the severance payments provided by the Separation Agreement and General Release.

Separation Agreement §2 sets out the terms on which Bonestroo was obligated to make a severance payment to Devery, but neither that nor any other provision of the agreement conditions Devery's right to that severance payment on compliance either with the Contractor Agreement or with his noncompete provisions. That right is subjected to only one qualification by Separation Agreement §2 itself:

> Provided the Independent Contractor Agreement is not terminated by the Company for cause, the Company shall pay Devery a severance payment. The amount of the severance payment shall be $46,995. The severance payment shall be paid in six equal monthly installments beginning the 1st day of the month following termination of the Independent Contractor Agreement. If the Company terminates the Contractor Agreement for cause, no severance payment shall be due.

Under Illinois law courts construing contracts "must ascertain parties' intentions exclusively from an agreement's language if it is clear and unambiguous" (PPM Fin., Inc. v.

23

Norandal USA, Inc., 392 F.3d 889, 892 (7th Cir. 2004)).[10] Here the language is indeed both clear and unambiguous: There is only one precondition to the severance payment--Bonestroo's termination of the Contractor Agreement for cause.

With no such termination having taken place, that is the end of the matter. Indeed, Bonestroo's entire response to Devery as to Count III is a single three-sentence paragraph challenging only a peripheral Devery argument about forfeiture (B.Mem. 13). There being no genuine issue of material fact on this issue, Devery's motion for summary judgment on Count III is granted.[11]

### Count IV: Breach of Fiduciary Duties

Bonestroo's final count alleges (1) that "during the term

---

[10]Devery appears to have assumed that Minnesota law rather than Illinois law applied to the Separation Agreement (D. Mem. 13). As already stated in the Choice of Law section, even on that premise the issue presents what conflict of law jurisprudence terms a "false conflict" (see, e.g., In re Air Crash Disaster, 644 F.2d 594, 605 n.2 (7th Cir. 1981)), for Minnesota law also instructs courts not to rewrite or modify an agreement when its terms are clear and unambiguous (Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004)). Hence the result is the same in all events.

[11]Bonestroo's Supp. Mem. 5 attempts to shoehorn into the lawsuit another dispute as to a different provision of the Separation Agreement: its Section 5. But that contention finds no warrant in the pleadings, and it was absent from Bonestroo's original responsive memorandum--which would itself have been too late for advancing the new argument under such cases (Andree v. Ashland County, 818 F.2d 1306, 1314 n. 11 (7th Cir. 1987)). Accordingly the newly-asserted contention will be rejected as a matter of principle, though this Court hastens to add that it has reviewed the assertion and found it wanting in substantive merit in any event.

24

of...the [Contractor Agreement], Devery was Bonestroo's agent for
the purposes set forth in that Agreement," (2) that certain
fiduciary duties--particularly a duty of loyalty--necessarily
attached to that agency and (3) that Devery breached those duties
(FAC ¶¶56-58).[12]  Devery does not apeak to the issue of fiduciary
status vel non at all -- instead his Mem. 14 simply quotes
Bonestroo's nonspecific response to Devery's written
interrogatory on the subject and concludes from that response
(justifiably, it would seem) that Bonestroo's asserted "factual
basis" for Count IV is the same as its basis for the claimed
breach of the Contractor Agreement (Count I).  Therefore, Devery
says, "[i]f summary judgment is entered in favor of Devery on
Count I, summary judgment should also be entered in favor of
Devery on Count IV."

  Bonestroo's broad-brush approach clearly poses conceptual
problems.  After all, independent contractor status (which the
parties agreed Devery occupied during the 2004 period) is
normally the antithesis of a fiduciary relationship, and the
parties plainly recognized that when they restructured their
relationship at the beginning of 2004:

_____

[12]Bonestroo's Mem. 14 suggests in passing that Devery's
fiduciary duties are also grounded in his status as a
shareholder. Like Bonestroo's new Count III claim rejected in n.
11, this contention is not to be found anywhere in its pleadings
(FAC ¶¶55-59), and it too is therefore barred (see Andree, 818
F.2d at 1314 n. 1).

25

1. Separation Agreement §1 began by stating "Devery's employment with the Company shall terminate effective January 8, 2004" and continued by recognizing that relationship was being superseded by an independent contractor relationship. All that survived from the prior relationship, as provided in Separation Agreement §9, were "the non-competition, non-solicitation and confidential information provisions" set out in the Acquisition Agreements.

2. In turn Contractor Agreement §9 expressly negated any employer-employee relationship and defined the parties' responsibilities in a manner that cannot fairly be described as fiduciary in nature -- in either direction.

3. Each document contained an integration clause that negated the existence of any other agreements between the parties (Separation Agreement §11 and Contractor Agreement §11(B)).

Thus Bonestroo blurs the issues when it states, seeking in its Interrogatory Answer 16 to explain the basis for FAC ¶57's charge of Devery's breach of fiduciary duties:

> As stated in the First Amended Complaint, Devery breached the duty of loyalty he owed to Bonestroo by failing to honor his contractual obligations under his agreement and, in fact, working against Bonestroo's interests by diverting clients from Bonestroo to himself.

In sum, Bonestroo's inclusion of a separate FAC Count IV

labeled "Breach of Fiduciary Duty" adds nothing of value to the mix. What has been said here as to Bonestroo's other claims sufficiently identifies those that are viable and why.

Essentially Bonestroo's treatment provides just one more illustration of the principle that the use of separate counts to set out different theories of recovery is a mistaken manifestation of the state law "cause of action" approach, rather than the federal concept of "claim for relief" (see NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 292 (7ᵗʰ Cir. 1991)). That is not what Rule 10(b)'s last sentence defines as the proper role for any such separation of a pleading into different counts. From here on out FAC Count IV will simply be disregarded as a claim for relief--something that does not prejudice either party.

## Conclusion

As stated at the outset, Devery's motion for summary judgment has been denied in part and granted in part. Because of the existence of genuine issues of material fact, summary judgment is denied as to Bonestroo's FAC Count I, while the absence of such issues causes the granting of Devery's motion as to Count III. With regard to Count II, a comparable analysis calls for the denial of summary judgment except as to Devery's claimed solicitation of Round Lake Park, on which Bonestroo fails as a matter of law. Finally, Count IV is out of the case as a purportedly separate claim for relief.

27

Because next week this Court will be sitting with the Court of Appeals by designation, it is compelled to set a very early status hearing date: April 14, 2006 at 9:30 a.m. At that time the parties will be expected to discuss both the procedure and timing for the next steps in this litigation.

Milton I. Shadur
Senior United States District Judge

Dated:    April 12, 2006

28